White, J.
 
 *
 

 I must regret the necessity I am under of determining this cause, and one other upon the docket alone. The question, upon the determination of which they depend, it seems to me, is the same; and it is one which will decide many other cases, now pending in the circuit courts. At the last term when the case was taken up, I was without assistance upon the bench; a belief, that at the present term, the court would be more full, induced
 
 *115
 
 me to postpone the decision. It has so happened, that I must determine the cause without aid, or postpone it longer. If the opinion now entertained should be overruled by a full court. I should regret the having given an incorrect decision; but I should have this consolation, that the parties themselves were unwilling to have the cause longer delayed, and that the opinion was the most correct I could form.
 

 A brief statement of the material facts, will shew the case to be this. That long previous to the year 1796 the plaintiff improved the land now in dispute; that he afterwards enlarged his improvement; that the land lies between Big Pigeon and Tennessee, and south of French Broad and Holsten rivers; that the plaintiff removed north of French Broad river, in the year 1786, and has never, by himself or any other person, had possession of this land since; but after the defendant obtained the possession, the plaintiff gave notice of his claim, and demanded possession which was refused; that previous to the year 1796 the defendant purchased this land of old Walker, who had improved it for himself, after the date of Shields' improvement. In pursuance of this purchases, the defendant obtained possession before 1796, and has continued that possession ever since, has had the land surveyed, and was about to obtain his patent, when stopped by this caveat; and the question which now presents itself is, which of these parties has, by the laws of the state, the right to obtain the patent.
 

 On behalf of the plaintiff it is urged, that he who first improved the land, with a view to appropriate it to himself, has the right; while the other insists, that he who was in possession, claiming it as his own, when the constitution was framed on the 8th day of February, 1796, is the person that the law prefers.
 

 In North Carolina, of which this was once a part, several statutes were passed, giving those who made improvements, a preference; but no statute of that state, previous to the year 1789, extended those preferences to that tract of country, of which this is a part. So far from it, we find the legislature continually surviving to reserve this country for the use of the Indians. At the time when the plaintiff made his improvement on this land, the laws neither sanctioned his act, nor gave him any right by virtue of it; and the first Legislative countenance given to the people south of French Broad and Holston and west of Big Pigeon, is in the 10 uncondition of the cession act, passed by North Carolina, in 1739; found in Iredel, page
 
 *116
 
 665. It is in these words-” That this act shall not prevent the people, now residing south of French Board. between the rivers. Tennessee and Big Pigeon, from entering their pre-emptions on that tract, should an office be opened, for the purpose, under an act of the present General Assembly.” From these words it has been argued, a right of pre-emption is recognized in the first improver.
 

 It seems to me, that the language here used sanctions no such idea; but supposing it did recognize a right of pre-emption in any person, it is only in those who resided in that tract of country when the act was passed. At that time the plaintiff lived north of French Broad, and of course is not one of those provided for.
 

 But it will be recollected, that the act in which this condition is the one, by virtue of which, the Legislature of North Carolina ceded, what is now the State of Tennessee, to the United States, and in the act itself, she wished to reserve a power to dispose of a certain portion of the land, thus ceded, during the same session it she chose to exercise it; and as she never did exercise that power, I do not, at present discover any effect that provision can have in this case.
 

 It appears to me, that when we wish to ascertain, with clearness, who is entitled to the preference, the natural cause is, first to look into our own acts, and see what they say upon that subject.
 

 The first, and perhaps the only material act of Tennessee, was passed in 1806, c. 1. sections 1 8 9. These sections refer us to the compact with the United States, and to the constitution of Tenessee, to a certain the characters who are considered entitled to pre-emptions by virtue of their occupancy. When we look into the compact, which may be seen in Tennesee acts 1806 c 10, it refers us again to the constitution of Tennessee, to fix upon the person entitled to pre-emption; and when we recur to this constitution we find in the declaration of rights, sec. 31, these words-” That the people residing south of French Broad and Holston, between the rivers Tennessee and Big Pigeon, are entitled to the right of pre-emption and occupancy in that tract.” Again, in the Schedule sec. 8. “ Unit a land office shall be opened, so as to enable the citizens south of French Broad and Holston, between the rivers Tennessee and Big Pigeon, to obtain titles upon their claims of occupancy and pre-emption, those who hold land, by virtue of such claims shall be eligible to serve in and capacities, where a freehold is, by this constitution
 
 *117
 
 made a requisite qualification.” These are the only provisions met with in the constitution upon this subject.
 

 The constitution was consented to by the members of the convention, on the 6th February 1796. The question then recurs, who is it, that by the language there used is to have the preference? It is the person residing upon or holding the land by occupancy, when the constitution was framed. They use the present participle, a residing” to point out clearly as is believed, that the person who, at that time, held and occupied the land as his own should ultimately be preferred as a purchaser, to all others.
 

 As this is the character pointed out by the constitution, & as the compact with the United States, and our own act of assembly point to the constitution to fix the character who is to have the preference, a court can do nothing but pronounce the law. It is not with it to say, that some other person is, upon reasonable principles, better entitled to the preference than the one fixed upon in the constitution.
 

 Writers have been referred to to prove that occupants ought to be favoured. If we suffer our minds to run back anterior to societies, and contemplate an individual selecting a spot of ground, before uninhabited, we can easily conceive, that after he had, by his own pour improve it, made a comfortable dwelling, and by clearing and cultivating land, made it vastly more valuable, it would be very reasonable for society, when formed, to prefer that man to all others, in obtaining a title for this piece of ground. But these are considerations for that department who framed the laws by which titles are to acquired; and not for that department who are to expound the laws, when made. In a state of society, a court must give to each, that preference which the laws gave him and no more.
 

 In fixing a provision in the constitution, the convention could do no more than point to some general class, that should have a preference; they, no doubt, made the rule in such a way as would include more of those reasonably entitled to pre-emption, than any other rule that could have been adopted would do. The members of the convention sat within sight of this tract of country; they knew the time it as settled, the circumstances under which it was settled, the risks that had been run, the danger that had been encountered, the sufferings that had been endured, and the losses that had been sustained, and the value that these settlements had been to the interior parts of the country; and with all these circumstances before them, made that provision, which, they believed, would reward the greatest number of those who acted meritoriously; and
 
 *118
 
 with that provision, those interested must be satisfied; the court can neither change nor add to the rights of pre-emption. Upon the whole I am opinion, the defendant is entitled to the preference
 
 *
 

 *
 

 Absent Campbell, J.
 

 *
 

 Preference, in obtaining title, and pre-emption, or right being the first buyer, throughout the whole system of our land laws; are synonimous, or mean the same thing.